NIES, Circuit Judge,
concurring.
I concur in the decision of the majority and in its conclusion that the ASBCA has jurisdiction over the subject claim. The majority effectively lays to rest the nonap-propriated funds doctrine, a result with which I am in entire agreement since I do not read 28 U.S.C. § 2517 as a jurisdictional section. In my view that section and 41 U.S.C. § 612 simply provide for payment of judgments, in cases over which the Claims Court and contract boards have jurisdiction, from funds appropriated by Congress to pay such judgments. In some instances the fund which is used to pay judgments must be reimbursed by the particular arm of the Government involved from its own appropriation, e.g., 31 U.S.C. § 1304(c)(2); 41 U.S.C. § 612(c). However, Congress does not require that all judgments against the Government must be reimbursable in that manner and I would not consider 28 U.S.C. § 2517 as the source of a jurisdictional problem.
An issue I see in the case,* however, is whether G.E. has a direct claim against the United States or only a claim against funds held by the United States. When Congress authorizes the executive departments to enter into contracts on behalf of the United States, in most instances there is no question but that the full faith and credit of the United States are behind such contracts. However, Congress can limit contracting authority so that a U.S. agency can create no obligation against funds of the U.S. Treasury generally, but only against particular funds. I conclude that as a matter of statutory interpretation Congress granted the executive power to obligate the U.S. *1574 Treasury for FMS contracts. Thus, we need not consider whether a claim against specific funds would be within the jurisdiction of the ASBCA.
The contracting power under which the subject contract was entered, 22 U.S.C. § 2762(a) reads in pertinent part:
[T]he President may, without requirement for charge to any appropriation or contract authorization otherwise provided, enter into contracts for the procurement of defense articles ... for sale ... to any foreign country ... if such country provides the United States Government with a dependable undertaking (1) to pay the full amount of such contract which will assure the United States Government against any loss on the contract. ...
This statute provides an express authorization to the executive to enter into contracts for non-appropriated fund activity. Nevertheless, I can find no expression of congressional intent in the above provisions which suggests that the United States is not subject to suit as on a contract which obligates appropriate funds. On the contrary, the statute can, in my view, only have meaning in its entirety on the theory or assumption that the United States can be fully liable on such contracts. Otherwise the provision that the executive must obtain an undertaking from the foreign country to protect the United States from “any loss” is empty verbiage.
The above discussion is not affected by the fact that in the contract under review here, the provision with respect to any equitable adjustment for overceiling R & D and B & P costs was specifically made “subject to the availability of funds,” which in my view clearly means foreign funds. The Government has not raised as an issue that the foreign funds which it holds are not sufficient to cover G.E.’s claim and I presume that this is not a problem. As a matter of contract law the above provision would, in my view, limit the amount of the Government’s liability but the provision does not change my analysis of the scope of contracting authority granted by the statute or my conclusion that G.E. has a claim directly against the U.S. Treasury if not paid from foreign funds held by the Government.

 General Electric replied to the jurisdictional issue simply by citing an unpublished decision of this court as controlling authority. Counsel’s conduct violates Rule 18 of this court and I would reprimand counsel.